IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No: 4:13-CV-0039-BO

| | |
|---|---|
| RANDER H. HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| ANN'S HOUSE OF NUTS (SNACKS ) | |
| HOLDING COMPANY), ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on *pro se* plaintiff's motion for judgment by default [DE 12] and defendants' motion for judgment on the pleadings [DE 20]. For the following reasons, the motion for judgment by default is DENIED, and defendant's motion for judgment on the pleadings is GRANTED.

## BACKGROUND

*Pro se* plaintiff Rander Harris began working as a plant controller at Ann's House of Nuts' ("AHON") facility in Robersonville, North Carolina on May 7, 2007. AHON terminated his employment effective February 9, 2012. After signing a separation and release agreement on March 1, 2012, Harris was paid the gross amount of $37,769.59 in exchange for his agreement to release various legal claims against defendants Ann's House of Nuts ("AHON") and its parent company, Snacks Holding Corporation ("SHC"). The release agreement provides, in pertinent part:

> In exchange for the Consideration from AHON, I give up and release all of My Claims and agree to the other terms of this Agreement. I will not make any

demands or claims against the Company for compensation or damages relating to
My Claims. The consideration that I am receiving is a fair compromise for the
release of My Claims and my agreement to the other terms of this Agreement.

Among other things, the release agreement defined "My Claims" – the claims Harris agreed to release – as including any claims he had "arising out of or relating to [his] employment with AHON or the termination of that employment." The release agreement also contains a provision specifically releasing all claims that Harris then had "for any alleged unlawful discrimination, harassment, retaliation, or reprisal" under "Title VII of the Civil Rights Act of 1964," "the Age Discrimination in Employment Act," or any other federal, state, or local statute, ordinance, or regulation. Harris did not exercise his right to revoke the release agreement within the seven-day revocation period and was paid the amount promised. He has not tendered back or returned any of this consideration.

On August 3, 2012, Harris filed an EEOC charge asserting that termination of his employment with AHON was discriminatory. Harris received his right to sue letter from the EEOC on November 19, 2012. Harris filed his first complaint asserting claims of age and race discrimination on February 13, 2013. Harris never served that complaint and instead filed an amended complaint (which he did serve) on June 6, 2013. In his amended complaint Harris alleges that he signed the release agreement because he "was told that [his] termination was due to reorganization," but later learned that his "position was not eliminated, [and] the timing of [his] replacement confirms that eliminating [his] position by reorganizing the duties was never the plan." On July 18, 2013, Harris filed the instant motion for default. On August 27, 2013, defendants filed the instant motion for judgment on the pleadings.

## DISCUSSION

I.  PLAINTIFF'S MOTION FOR DEFAULT.

The Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal*, 616 F.3d 413, 417 (4th Cir. 2010). The Fourth Circuit has taken an increasingly liberal view of avoiding defaults. *Cincinnati Ins. Co. v. NVR, Inc.*, 2012 WL 6728244 at *1 (W.D.N.C. Dec. 28, 2012). The law strongly disfavors motions for default. *Tazco, Inc. v. Dir., Office of Workers Comp. Program*, 895 F.2d 949, 950 (4th Cir. 1990). When considering an entry of default, courts consider "whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204–05 (4th Cir. 2006). The harsh entry of default is not proper if the mistake was inadvertent, quickly reconciled, and the opposing party suffered no prejudice. *Thompkins v. DOC*, 2012 WL 965956 at *10 (E.D.N.C. March 21, 2012).

Here, plaintiff's motion is baseless. Harris bases his motion on an assertion that defendants omitted information from their corporate disclosure statement to "obstruct justice" and to conceal the fact that SHC hired an individual Harris describes as his key witness. Defendants' disclosure statement is accurate and discloses the legal names of defendants. Per FED. R. CIV. P. 7.1 and Local Civil Rule 7.3, parties are required to disclose their legal names and the legal names of their parent corporations, but they are not required to disclose their trade names. Further, plaintiff filed his motion for default before the answer deadline had expired.

3

Such a motion was improper at that stage of the proceedings. Accordingly, plaintiff's motion for default is denied.

    II.    DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS.

A motion for judgment on the pleadings under FED. R. CIV. P. 12(c) is governed by the same standard that applies to a motion to dismiss under Rule 12(b)(6). *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although *pro se* complaints are to be liberally construed when applying this standard, the Fourth Circuit has stressed that "generosity is not fantasy." *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998). In deciding a Rule 12(c) motion, moreover, the Court "may look to the uncontested pleadings as a whole – and not simply plaintiff's complaint – in determining whether all facts necessary to deciding the issue clearly appear." *McQuade v. Xerox Corp.*, 2011 WL 344091 at *3 (E.D.N.C. Feb. 1, 2011). To enter judgment on the basis of a plaintiff having signed a release agreement, the court conducts a two-step analysis to determine (1) whether the release agreement is valid; and (2) if it is, whether the agreement's plain language bars the plaintiff's claims. *See id.* at *4–5 (undertaking the described two-step process).

Here, the undisputed facts alleged in the pleading unequivocally demonstrate that the release agreement satisfies both steps and bars Harris's claims in their entirety. The validity of a release is governed by general principles of contract law and may be invalid due to fraud. *Id.* at *4. Plaintiff claims this to be the case because defendants allegedly told him inaccurate

4

information as to the reason for his termination. North Carolina[1] has long adhered to the rule that a plaintiff seeking to invalidate a contract because of fraud or duress must first return any consideration received pursuant to the contract. *See, e.g., Davis v. Hargett*, 92 S.E.2d 782, 785 (N.C. 1956) (describing tender or return of the consideration as a prerequisite to such an action). Plaintiff has not returned the consideration he received pursuant to the release agreement. He affirmatively admits this.

*McQuade* demonstrates what to do in a situation where, as here, plaintiff raises claims of age and race discrimination, asserts he can bring the claims notwithstanding the terms of a release agreement because defendant's fraudulent conduct induced plaintiff to sign, and plaintiff does not return the consideration given in exchange for the release. 2011 WL 344091 at *3. There, the court found the release valid against the attack on fraud principles because the plaintiff failed to return the consideration given in exchange for the release.[2] This Court holds the same. The release agreement at issue here is valid.

The valid release agreement specifically bars plaintiff's claims by its plain language. The claims plaintiff asserts here fit squarely within the scope of claims he agreed to release in exchange for the consideration he received from AHON. Accordingly, defendants' motion for judgment on the pleadings is granted and Harris's amended complaint is dismissed with prejudice.

---

[1] The release agreement at hand contains a Maryland choice of law provision, but because plaintiff seeks to challenge the validity of the entire agreement, the choice of law provision is also challenged and this Court will apply North Carolina law.

[2] The Fourth Circuit has explicitly rejected plaintiff's claim that the ADEA does not require him to have paid back his consideration before alleging fraud. *Adams v. Moore Bus. Forms, Inc.*, 224 F.3d 324, 327 n* (4th Cir. 2000).

## CONCLUSION

For the forgoing reasons, plaintiff's motion for judgment by default [DE 12] is DENIED and defendants' motion for judgment on the pleadings [DE 20] is GRANTED. Plaintiff's amended complaint is hereby DISMISSED with prejudice.

SO ORDERED.

This the __9__ day of October, 2013.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE